UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,            )
        Plaintiff,                  )
                                         )
v.                                   ) Civil Action No.
                                         )
FUNDS AND FINANCIAL INSTRUMENTS      )
DEPOSITED OR CREDITED TO BANK OF     )
CHINA LIMITED, NEW YORK BRANCH       )
ACCOUNT NUMBER 7001-100012-000-001   )
OR ANY OTHER CORRESPONDENT ACCOUNT   )   09 CA 11190
MAINTAINED BY THE BANK OF CHINA      )
LIMITED AT THE BANK OF CHINA         )
LIMITED, NEW YORK BRANCH, NOT TO     )
EXCEED $1,196,890.54; and FUNDS AND  )
FINANCIAL INSTRUMENTS DEPOSITED OR   )
CREDITED TO JP MORGAN CHASE BANK     )
NATIONAL ASSOCIATION ACCOUNT NUMBER  )   MAGISTRATE JUDGE _LTS_
0011580131 OR ANY OTHER              )
CORRESPONDENT ACCOUNT MAINTAINED     )
BY THE CIMB BANK BERHAD AT JP        )
MORGAN CHASE BANK NATIONAL           )
ASSOCIATION, NOT TO EXCEED           )
$83,806.89,                          )
        Defendants.                 )

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, in a civil action of forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C) and 981(k)(1)(A), alleges that:

1.     This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and 1355. Venue is appropriate pursuant to 28

U.S.C. § 1395.

2. The defendant properties are identified as:

> A. funds and financial instruments deposited or credited to Bank of China Limited, New York Branch account number 7001-1000012-000-001 or any other correspondent account maintained by the Bank of China Limited at the Bank of China Limited, New York Branch, not to exceed $1,196,890.54; and
>
> B. funds and financial instruments deposited or credited to JP Morgan Chase Bank National Association account number 0011580131 or any other correspondent account maintained by the CIMB Bank Berhad at JP Morgan Chase Bank National Association, not to exceed $83,806.89,

(collectively, the "Funds").

3. As detailed in the Affidavit of United States Secret Service ("USSS") Special Agent Michael D. Burnett, attached hereto as Exhibit A and incorporated herein by reference, the United States has probable cause to believe that the Funds constitute or are derived from proceeds traceable to wire fraud in violation of 18 U.S.C. § 1343 and bank fraud in violation of 18 U.S.C. § 1344, and therefore are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 981(k)(1)(A).

4. In addition, United States has probable cause to believe that the Funds constitute property involved in money laundering transactions in violation of 18 U.S.C. §§ 1956(2)(A), 1956(2)(B)(i) and/or 1957, and therefore are subject to seizure

and forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(k)(1)(A).

5. The Funds originated from accounts located in banks in China and Malaysia which have branches and correspondent accounts in the United States, and pursuant 18 U.S.C. § 981(k)(1)(A), if funds subject to forfeiture are deposited into an account at a foreign bank, and that foreign bank has an interbank account in the United States with a covered financial institution (as defined in 31 U.S.C. § 5318(j)(1)), the funds subject to forfeiture shall be deemed to have been deposited into that foreign bank's interbank account in the United States, and any restraining order, seizure warrant, or arrest warrant *in rem* regarding the funds may be served on the covered financial institution and funds in the interbank account, up to the value of the funds held in the account at the foreign bank, may be restrained, seized, or arrested.

6. Further, if a forfeiture action is brought against funds pursuant to 18 U.S.C. § 981(k)(1)(A), it is not necessary for the government to establish that the funds are directly traceable to the funds that were deposited into the foreign bank, nor is it necessary for the Government to rely on the application of 18 U.S.C. § 984.

7. The Funds, therefore, are subject to seizure and forfeiture to the United States of America, pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 981(k)(1)(A).

WHEREFORE, the United States of America prays:

1. That a Warrant and Monition, in the form submitted herewith, be issued to the United States Secret Service commanding it to seize the Funds and give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2. That judgment of forfeiture be decreed against the Funds;

3. That thereafter, the Funds be disposed of according to law; and

4. For costs and all other relief to which the United States may be entitled.

Respectfully submitted,

MICHAEL K. LOUCKS
Acting United States Attorney,

By: _____
KRISTINA E. BARCLAY
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Dated: July 13, 2009

## VERIFICATION

I, Michael D. Burnett, Special Agent, United States Secret Service, state that I have read the foregoing Verified Complaint for Forfeiture in Rem and the Affidavit attached as Exhibit A, and that the contents thereof are true to the best of my knowledge, information and belief.

Michael D. Burnett, Special Agent
United States Secret Service

Dated: July 13TH, 2009

**COMMONWEALTH OF MASSACHUSETTS**

Suffolk, ss.                                                      Boston

Then personally appeared before me the above-named Michael D. Burnett, Special Agent, United States Secret Service, who acknowledged the foregoing to be true to the best of his knowledge, information, and belief, on behalf of the United States of America.

Subscribed to and sworn to before me this 13a day of July, 2009.

Notary Public
My commission expires:

JEAN L. JAMIESON
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 14, 2014

5

## EXHIBIT A

## AFFIDAVIT OF MICHAEL D. BURNETT

I, Michael D. Burnett, being duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with the U.S. Secret Service ("USSS"), and have been so employed since April 18, 2005. Prior to being appointed a Special Agent, I graduated from Saint Anselm College in Manchester, New Hampshire, with a Bachelors Degree in Criminal Justice. I am also a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynn County, Georgia and the Special Agent Training Program at the James J. Rowley Training Center in Laurel, Maryland. In my official capacity, under Title 18, United States Code, Section 3056, I am charged with investigating violations of the United States Code relating to bank fraud and wire fraud under the scope of the New England Electronic Crimes Task Force.

2. I base this affidavit on information learned through interviews of Eastern Bank employees and through a review of bank records and documentary evidence. In particular, I have gathered information regarding transfers of funds from bank account belonging to LJA Forwarding Inc. I submit this affidavit based upon my personal knowledge derived from the information listed below.

3. This affidavit is made in support of a complaint for forfeiture in rem against the following:

   A. Funds and financial instruments deposited or credited to Bank of China Limited, New York Branch account number 7001-1000012-000-001

1

or any other correspondent account maintained by the Bank of China Limited at the Bank of China Limited, New York Branch, not to exceed $1,196,890.54;

B.  Funds and financial instruments deposited or credited to JP Morgan Chase Bank National Association account number 0011580131 or any other correspondent account maintained by the CIMB Bank Berhad at JP Morgan Chase Bank National Association, not to exceed $83,806.89,

(collectively, the "Funds").

4.  As set forth in more detail below, I have probable cause to believe that the Funds constitute or are derived from proceeds traceable to wire fraud in violation of 18 U.S.C. § 1343 and bank fraud in violation of 18 U.S.C. § 1344, and therefore are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 981(k)(1)(A).  I further have probable cause to believe that the Funds constitute property involved in money laundering transactions in violation of 18 U.S.C. §§ 1956(2)(A), 1956(2)(B)(i) and/or 1957, and therefore are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(k)(1)(A).  These accounts are located in banks in China and Malaysia which have branches and correspondent accounts in the United States that are referred to in paragraph 3 above.

5.  This affidavit does not contain all of the information known to me and other law enforcement officers regarding this criminal investigation, but only those facts which are sufficient to establish probable cause for forfeiture.

## INVESTIGATION

### Information Received From Eastern Bank

6.      On November 13, 2008, the USSS Boston Field Office was contacted by Peter Malionek ("Malionek"), Fraud Investigations Officer for Eastern Bank, located in Lynn, Massachusetts. Malionek reported that Eastern Bank may have been a victim of a fraudulent check scheme. He explained that Eastern Bank business client Linda Amiro ("Amiro") deposited two (2) counterfeit checks into an Eastern Bank business account and wire transferred the proceeds of those checks to foreign financial institutions before Eastern Bank was notified that the checks had in fact been returned as counterfeit. Malionek gave the following chronology of events:

    a. October 24, 2008, Amiro deposited check number 38671, in the amount of $428,563.21and drawn on Citibank account number 38636645 held in the name of EDC (Export Development Canada), 151 O'Connor, Ottawa, Canada K1A 1K3 (the "EDC Citibank Account"), into Eastern Bank business account number 00600120463, held in the name of LJA Forwarding Inc. (the "LJA Eastern Account").

    b. On October 28, 2008, Amiro initiated a wire transfer in the amount of $298,000. The funds were sent through Bank of China in New York, New York as an intermediary financial institution, and were ultimately deposited in Bank of China Limited account number 4060101-0188-016462-7, held in the name of Wang Tao (the "Wang Tao Bank of China Account"), in Beijing, China.

c. On October 29, 2008, Amiro initiated a wire transfer in the amount of $83,806.89. The funds were sent through Bank of China in New York, New York as an intermediary financial institution, and were ultimately deposited in CIMB Bank account number 14140123440527, held in the name of Lee Yoon Kwang, in Kuala Lumpur, Malaysia.

d. On October 31, 2008, Amiro deposited check number 4892, in the amount of $998,767.28 and also drawn on the EDC Citibank Account, into the LJA Eastern Account.

e. On November 4, 2008, Amiro initiated three (3) separate wire transfers totaling $898,890.54 from the LJA Eastern Account:

- The first wire transfer, in the amount of $299,630.18, was sent through Bank of China in New York, New York as an intermediary financial institution and ultimately deposited in the Wang Tao Bank of China Account.

- The second wire transfer, in the amount of $299,630.18, was sent through Bank of China in New York, New York as an intermediary financial institution and ultimately deposited in Bank of China Limited account number 4030000-0188-095627-6, held in the name of Liu Zhao Min.

- The third wire transfer, in the amount of $299,630.18, was sent through Bank of China in New York, New York as an intermediary financial institution and ultimately deposited in Bank of China Limited account number 4080900-0188-074859-9, held in the name of Wang Meng Xue.

On November 5, 2008 Eastern Bank's Deposit Operations department was notified that both checks drawn on the EDC Citibank Account and deposited into the LJA Eastern Account were being returned. Check number 38671 was returned stamped "Altered," and check number 4892 was returned stamped "Counterfeit."

7.     Malionek reported that he spoke to Amiro on November 7, 2008 at an Eastern Bank branch in Lynnfield, Massachusetts, regarding the transactions. Amiro stated that she was contact by email by an individual claiming to be Eizoko Bayashi (eizokobayashi_jp331@hotmail.com and buckfever395@cox.net ), a representative of the Intochu Corporation in Japan. The subject put Amiro in touch with another individual claiming to be Allen Lincoln of Lincoln Investment Limited, who also worked for the Intochu Corporation. Lincoln contacted Amiro via email (Lincoln.investment@yahoo.com) and via telephone (647-832-2817). Allen Lincoln requested that Amiro take custody of two business checks, that would be sent via Federal Express to her private residence, and deposit the checks into her bank account. Once the funds had been deposited, she was to contact the subjects via email and await further instructions. After depositing the checks, Amiro claimed that she was instructed to send the monies via direct wire transfer to various accounts (listed previously in this report) located in China and

5

Malaysia. Amiro complied with the instructions, initiated the wire transfers and, as instructed, retained ten percent (10%) of the total funds in her account for her service. According to Eastern Bank officials, Amrio used the ten percent (10%) retained in the LJA Eastern Account to pay various bills.

8. On November 14, 2008, I contacted Malionek via telephone at Eastern Bank. He confirmed the information set forth above and stated that Eastern Bank had attempted to reverse the wire transfers, but according to Bank of China, the monies had already been sent to their final destinations. Malionek said he had spoken to Amiro on several occasions and explained to her the gravity of the situation and that she was responsible for the funds directly wired out of the LJA Eastern Account. Malionek faxed me copies of all documents in his possession relating to this case, including photocopied images of the fraudulent checks.

**Interview of Amiro**

9. Also on November 14, 2008, I met with Amiro at her residence in Peabody, Massachusetts. Amiro originally contacted the USSS claiming to be the victim of a fraudulent check scheme. Amiro stated that she owns and operates a international freight shipping company called LJA Forwarding Inc. The business is located at her private residence in Peabody.

10. Amiro stated that during the month of October 2008, she was contacted via e-mail by a subject claiming to be Eizoko Bayashi ("Bayashi"), a representative of the Intochu Corporation in Japan. Bayashi claimed that he was in need of a person to assist in the movement of monetary funds through a financial institution in the United States. Amiro agreed to his request and she

6

was put in contact with another individual claiming to be Allen Lincoln ("Lincoln") of Lincoln Investment Limited.

11.   Lincoln contacted Amiro via email and telephone on various dates and stated he would be sending a check in the amount of $428,563.21 to Amiro's residence via Federal Express. Lincoln instructed Amiro to deposit the check into her account and direct wire transfer the funds to various accounts at the Bank of China, Beijing, China and CIMB Bank, Kuala Lumpur, Malaysia. On October 24, 2008, after receiving the check, Amiro complied with the request and deposited the check into her business account at Eastern Bank. On October 28 and 29, 2008, Amiro initiated the direct wire transfer from her business account at Eastern Bank to the foreign accounts using her personal home computer.

12.   Amiro stated she informed Lincoln via email that the funds had been transferred to the requested accounts. Lincoln sent another check to Amiro in the amount of $998,767.28 via Federal Express. Amiro received the check and deposited it into her business account at Eastern Bank. Lincoln instructed Amiro to direct wire transfer the funds from her account to various accounts at the Bank of China, Beijing, China. Amiro complied with the request and notified Lincoln via email that the funds had been transferred.

13.   Amiro was notified days later by Eastern Bank that both checks were fraudulent. Amiro stated she did not believe that someone would do this to her. Amiro was notified by Eastern Bank employees that she was responsible for the lost funds because the wire transfers were not able to be reversed. Amiro attempted to contact Lincoln via telephone, but the phone number had been disconnected. She was able to make contact with Lincoln via email and

explained the situation. Lincoln claimed an error had been made and would attempt to remedy the problem. As of the date of this Affidavit, Lincoln has not contacted Amiro again.

14. Amiro provided copies of all email correspondences between her and Bayashi and Lincoln. Amiro also provided a copy of a Federal Express Waybill with address, Federal Express account numbers and Federal Express tracking information for the second check sent to her.

15. During the November 14, 2008 interview, Amiro appeared distraught and upset. She stated that she could not believe that this had happened to her and stated that she did not believe she was responsible for all the funds lost in this case. She stated she felt that she was responsible for some of the monies lost, but "certainly not all".

## FORFEITABILITY OF THE FUNDS

16. At all times relevant to this investigation, Eastern Bank was a financial institution as defined in 18 U.S.C. § 20(1); that is, Eastern Bank is a federally insured depository institution.

17. Based on foregoing, there is probable cause to believe that Eastern Bank was the victim of a check fraud scheme in violation of the wire fraud statute, 18 U.S.C. § 1343 and the bank fraud statute, 18 U.S.C. § 1344. Accordingly, I respectfully submit that there is probable cause to believe that the Funds constitute or are derived from proceeds traceable to wire fraud in violation of 18 U.S.C. § 1343 and bank fraud in violation of 18 U.S.C. § 1344, and therefore are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

18.    There further is probable cause to believe that the Funds were transferred from the LJA Eastern Account to accounts in China and Malaysia with the intent to promote the carrying on of wire fraud and bank fraud, and therefore constituted money laundering transactions in violation of 18 U.S.C. § 1956(a)(2)(A), and that the transfers were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of wire and mail fraud in violation of 18 U.S.C. § 1956(a)(2)(B)(i).  Accordingly, the Funds constitute property involved in money laundering transactions in violation of 18 U.S.C. § 1956 and are therefore subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

19.    Finally, all of the wire transactions described in paragraph 6 were financial transactions in more than $10,000 in proceeds derived from bank fraud and wire fraud.  Accordingly, the Funds constitute property involved in money laundering in violation of 18 U.S.C. § 1957, or property traceable thereto, and are therefore subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

20.    Since the accounts listed in paragraph 6 are located at foreign banks, namely, the Bank of China Limited and the CIMB Bank Berhad, the above mentioned funds that are subject to forfeiture shall be deemed to have been deposited into the interbank accounts in the United States, referred to in paragraph 3, pursuant to 18 U.S.C. § 981(k) and, therefore, those accounts are subject to seizure and forfeiture in the amounts so indicated in paragraph 3 above, namely, $1,196,890.54 from Bank of China Limited account number 7001-1000012-000-001 or any other correspondent account maintained Bank of

China Limited at the Bank of China Limited and $83,806.89 from CIMB Bank Berhad account number 0011580131 or any other correspondent account maintained by the CIMB Bank Berhad at JP Morgan Chase Bank National Association.

Signed under the penalties of perjury this 13TH day of July 2009.

Michael D. Burnett, Special Agent
United States Secret Service
Department of Homeland Security

10